NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**DOUGLAS W. ABRUZZO,**
*Petitioner,*

**v.**

**SOCIAL SECURITY ADMINISTRATION,**
*Respondent.*

---

2011-3218

---

Petition for review from the Merit Systems Protection Board in case no. CB7521100014-T-1.

---

Decided: July 16, 2012

---

DOUGLAS W. ABRUZZO, of Orlando, Florida, pro se.

ALLISON KIDD-MILLER, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With her on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and TODD M. HUGUES, Deputy Director.

---

Before RADER, *Chief Circuit Judge*, CLEVENGER and
REYNA, *Circuit Judges*.

PER CURIAM.

Mr. Douglas W. Abruzzo ("Abruzzo") is a former Administrative Law Judge ("ALJ") with the Social Security Administration ("SSA"). The SSA charged Abruzzo with failure to follow instructions and conduct unbecoming an ALJ, all of which were detailed in twenty-four specifications. Abruzzo appeals the final decision of the Merit Systems Protection Board ("MSPB" or "Board") which sustained each charge and found good cause to remove him from his ALJ position. *See Soc. Sec. Admin. v. Abruzzo*, No. CB-7521-10-0014-T-1, 2011 MSPB LEXIS 4752, at \*11 (M.S.P.B. Aug. 3, 2011). Because we find the Board's determination is supported by substantial evidence, not an abuse of discretion, and otherwise according to law, we affirm.

## I. Facts

### A. Background

As an ALJ, Abruzzo conducted hearings and issued decisions in disability matters in a Florida SSA Office of Disability Adjudication and Review, serving from 2004 until his removal in 2011. This proceeding originated on March 2, 2010, with the filing of a complaint signed on behalf of the SSA by its Chief Judge, Frank A. Cristaudo.

The SSA sought to remove Abruzzo from his ALJ position based on the following four charges: (I) failure to follow instructions; (II) failure to follow a direct order to treat his coworkers and the public with courtesy; (III) conduct unbecoming an ALJ; and (IV) failure to follow a direct order to conduct scheduled hearings. Supporting

these charges, twenty-four specifications were detailed, giving examples of the conduct alleged.

Pertaining to charge one, failure to follow instructions, three specifications allege that Abruzzo's supervisors ordered him to stop directly contacting sources for test data and to correct at least three portions of his standard pretrial order that failed to comply with SSA regulations and policy.

Pertaining to charge two, failure to follow a direct order to treat coworkers and the public with courtesy, seven specifications allege that Abruzzo acted offensively and failed to conduct himself with propriety. For example, Abruzzo warned employees of the potential for harm from supervisors, likened the management of the office to "Nazis," and stated that the director would send people to gas chambers. In addition, numerous e-mail messages from Abruzzo, many copied to other SSA employees, contain personal and derogatory comments about superiors, such as claiming the director has "neo-Nazis" attitudes.

Pertaining to charge three, conduct unbecoming an ALJ, specifications five and six dealt with an incident in early-April 2009. Abruzzo was allegedly observed by employees painting with an oily substance what appeared to be the sign of the cross above the office doors of Hearing Office Chief ALJ ("HOCALJ") Barbeito and Director James. The unknown substance soon began to drip onto the office floor, and caused a great disruption because it was uncertain whether it posed a danger. HOCALJ Barbeito was "stunned" and "frighten[ed]," Director James was "terrified," and other staff members were "fearful." *See Soc. Sec. Admin. v. Abruzzo*, No. CB-7521-10-0014-T-1, 2010 MSPB LEXIS 5624, at *71-77

(M.S.P.B. Sept. 29, 2010). HOCALJ Barbeito explained that the staff was "speaking amongst themselves . . . and they were very concerned." *Id*. at *73. Abruzzo explained that he had used "blessed oil" because he believed that HOCALJ Barbeito and Director James "were under the influence of evil at that particular time." *Id*. at *76. Regional Chief ALJ ("RCALJ") Garmon ordered Judge Abruzzo "not to put anymore substance [sic] of any kind" on Federal property. *Id*. Notwithstanding this order, four days later Abruzzo was again observed painting with an oily substance above his own door while purportedly "speaking in tongues." *Id*. This behavior further alarmed co-workers and SSA placed additional security officers at the building in response. Eight other specifications were added under this charge, essentially asserting that the same facts alleged under charge two also demonstrated conduct unbecoming an ALJ.

Pertaining to charge four, failure to follow a direct order, three specifications allege that Abruzzo refused to conduct scheduled hearings, claiming that he was too occupied responding to the complaints lodged against him by the SSA. Despite being ordered by HOCALJ Barbeito to conduct the hearing as scheduled, Abruzzo refused.

## B.  Initial and Final Determinations

The parties engaged in full discovery on the charges and specifications, and were allowed to introduce evidence, examine and cross-examine witnesses, and file briefs. A trial began on July 27, 2010, and lasted several days. The ALJ issued an initial decision September 29, 2010.

Regarding charge one, Abruzzo did not dispute the factual assertions that he circumvented the chain of

command in obtaining data or that he failed to correct his pretrial order. He argued instead that his judicial independence was impinged by such SSA orders. The ALJ determined that the superiors' orders to Abruzzo were lawful, and sustained the charge, finding that it alone established good cause for removal. *Id.* at \*33.

Regarding charge two, Abruzzo did not dispute his conduct relating to discourtesy to co-workers and lack of propriety, asserting only that he did not know what standard he was required to meet. The ALJ found that Abruzzo did know and understand generally accepted rules of conduct and that his remarks were discourteous and offensive. The ALJ again sustained the charge. *Id.* at \* 70.

Regarding charge three, Abruzzo again did not dispute the facts relating to his conduct, including the alleged incidents of April 2009. The ALJ found that

It is clear Judge Abruzzo's admitted conduct, as outlined above, clearly constitutes conduct unbecoming an administrative law judge.

Judge Abruzzo's actions, whether intended or not, instilled fear and terror into the work place. His actions, for which he alone is responsible, caused interruptions in the operation of the office. Many staff hours, both Hearing and Regional staffs were expended attempting to resolve these incidents. Additional security was even necessary and absolutely no justification exists for Judge Abruzzo's conduct. Judge Abruzzo not only engaged in the conduct on April 3, 2009, but, even after being told not to engage in such conduct, returned to

work on April 7, 2009 and proceeded to engage in the same conduct again.

Judge Abruzzo's actions on April 3, and 7, 2009 were very serious and disruptive and standing alone constitute good cause for discipline up to and including removal.

*Id*. at *77-78. The ALJ found further that several specifications overlapping with the incidents from count two also supported finding conduct unbecoming an ALJ. *Id*. at *71.

Regarding count four, Abruzzo did not dispute his conduct. He challenged HOCALJ Barbeito's authority to make the order, and explained that he would not have had the disposition necessary to conduct a hearing at that time. The ALJ, sustaining the count, stated: "Judge Abruzzo has an irrational perception that he is not subject to any orders or directives from the hearing office chief . . . ." *Id*. at *91.

The ALJ found that the SSA had established, by preponderant evidence, good cause to remove Abruzzo from his position as ALJ. The full Board affirmed each of the four charges in a final order issued August 3, 2011. The Board found that there was no new, previously unavailable, evidence adduced, and that the ALJ made no error of law. Accordingly, the Board denied Abruzzo's petition for review. Abruzzo timely petitioned for review of the Board's final decision in this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## II. Discussion

### A.   Standard of Review

The scope of our review in an appeal from a decision of the Board is limited. *Barrett v. Soc. Sec. Admin.*, 309 F.3d 781, 785 (Fed. Cir. 2002). This court affirms the Board decision unless it is (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence. *Id.*; 5 U.S.C. § 7703(c); *see also Kahn v. Dep't of Justice*, 618 F.3d 1306, 1312 (Fed. Cir. 2010); *Hayes v. Dep't of the Navy,* 727 F.2d 1535, 1537 (Fed. Cir. 1984). Petitioner bears the burden of establishing reversible error on appeal. *See Fernandez* v. *Dep't of Army,* 234 F.3d 553, 555 (Fed. Cir. 2000).

### B. Analysis

Abruzzo claims on appeal that the Board failed to consider his counterclaim and evidence of an allegedly hostile workplace and conspiracy to remove him, that the Board applied the wrong fact-finding standard when deciding the conduct unbecoming an ALJ charge, and that the orders issued to Abruzzo by his ALJ supervisors were improper and interfered with his judicial independence.

### 1. Procedural and Evidentiary Matters

Abruzzo argues that from the onset of this dispute, there has been a "conspiracy to commit prohibited personnel practices and create a hostile workplace, initiated at the highest levels of SSA." Petitioner Br. at 1. Abruzzo contends that the presiding ALJ simply refused to con-

sider his counterclaim to this effect, and improperly excluded various exhibits supporting it.[1] *Id.*

This court has held that procedural and evidentiary matters fall within the Board's sound discretion. *Barrett,* 309 F.3d at 786. This court will not overturn the Board's procedural and evidentiary decisions unless the decision constitutes an abuse of discretion. *Id.*

While Abruzzo argues that his counterclaim was dismissed and evidence was improperly excluded, the record reveals the opposite. The ALJ clearly permitted "background facts relevant to the complaint or any defense to the complaint" to "be raised at the hearing." Petitioner Br. at 1. The ALJ in fact admitted several of Abruzzo's exhibits on this theory, but chose to exclude six other exhibits because they were not on Abruzzo's pre-hearing list as required by the scheduling order. Simply enforcing the scheduling order in this case is not an abuse of discretion. The ALJ, moreover, specifically discussed Abruzzo's accusation that HOCALJ Barbeito was harassing and making a scapegoat of him, but found credible evidence of a hostile workplace absolutely lacking. *See Abruzzo,* 2010 MSPB LEXIS 5624, at *50. We find no abuse of discretion in these procedural and evidentiary matters.

### 2. Conduct Unbecoming an ALJ Standard

On appeal, the underlying misconduct alleged by the SSA in charge three is never denied by Abruzzo, including

---

[1]    Abruzzo also asserts that an October 15, 2009 conference call improperly "dismissed" his counterclaims and supporting evidence without the opportunity to be heard. We find that this conference call predates the matter presently on appeal and is irrelevant to the disposition of the agency's removal complaint of March 3, 2010.

the specified events that occurred in April 2009. He admits of that incident, in fact, that he "acted improperly." Petitioner Br. at 40. Abruzzo contends instead that the Board applied the wrong standard in determining conduct unbecoming an ALJ. He argues that the standard for this charge is "Highly Subjective And [sic] Circumstance Dependent," and that "there is no reliable way to ascertain the line between innocent conduct and punishable misconduct." Petitioner Br. at 32-34. He advances no alternative standard.

We find that the Board applied an acceptable standard here. It described conduct unbecoming as "conduct that revealed a temperament that detracted from character or reputation." *Abruzzo*, 2011 MSPB LEXIS 4754, at *6 (citing *Miles v. Dep't of Army,* 55 M.S.P.R. 633, 637 (1992) (holding that conduct unbecoming is "unattractive, unsuitable, or detracting from the employee's character")). That standard is consistent with a recent articulation reviewed by this court. In *Long v. SSA*, this court reviewed the standard phrased as "conduct that 'undermines public confidence in the administrative adjudicatory process,'" including misconduct "relate[d] in some way to the character traits expected of an ALJ," and affirmed the good cause removal of an ALJ for conduct unbecoming. 635 F.3d 526, 533-36 (Fed. Cir. 2011).

We sustain the Board's "conduct unbecoming" standard applied here—that which "detracts from the ALJ's character or reputation" before the public. We hold that there was no legal error or abuse of discretion in finding "conduct unbecoming an ALJ."

### 3. Improper Orders

Abruzzo asserts that the intent of the Administrative Procedures Act ("APA") was violated because his supervisors lacked authority to issue the orders in question. Petitioner. Br. at 3-31. Abruzzo claims that his supervisors may only give orders as to "general" or "routine office management." *Id.* at 17, 19. We disagree.

First, the ALJ found that all of Abruzzo's supervisors possess authority to issue orders to Abruzzo. *See Abruzzo*, 2010 MSPB LEXIS 5624, at \*7-8. Pursuant to the position description, the HOCALJ is supervisory to an ALJ. *Id.* We have thus held that discipline may be appropriate for ALJs disregarding instructions from the HOCALJ. *Butler v. Soc. Sec. Admin.,* 331 F.3d 1368, 1370 (Fed. Cir. 2003). The same authority logically extends to RCALJ Garmon and Chief Judge Cristaudo—both of whom hold positions superior to HOCALJ Barbeito.

Second, an ALJ, while enjoying qualified judicial independence, is not immune from supervision. *Brennan* v. *Dep't of Health & Human Servs.,* 787 F.2d 1559, 1562 & n.1 (Fed. Cir. 1986); *Soc. Sec. Admin. v. Brennan,* 19 M.S.P.R. 335, 340 (1984). For example, orders requiring that certain material be included or excluded from pretrial orders; orders requiring that co-workers be treated with respect, courtesy and consideration; and orders requiring the performance of scheduled hearings, have all been found appropriate. *See Nash v. Bowen,* 869 F.2d 675, 680 (2d Cir. 1989); *Soc. Sec. Admin.* v. *Glover,* 23 M.S.P.R. 57 (1984); *Soc. Sec. Admin.* v. *Manion,* 19 M.S.P.R. 298 (1984). The Board's findings that none of the orders at issue actually interfered with Abruzzo's decision-making as a judge are supported by substantial evidence.

#### 4. Penalty Imposed

Administrative law judges may be removed for "good cause established and determined by the [Board]." 5 U.S.C. § 7521(a). "Deference is given to the agency's judgment unless the penalty exceeds the range of permissible punishment specified by statute or regulation, or unless the penalty is so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion." *Parker v. U.S. Postal Serv.,* 819 F.2d 1113, 1116 (Fed. Cir. 1987) (internal quotation marks omitted). But we may overturn a penalty imposed by the Board for an ALJ's misconduct "[o]nly in the exceptional case in which the penalty exceeds that permitted by statute or regulations or is so harsh that it amounts to an abuse of discretion." *Brennan v. Dep't of Heath and Human Servs.*, 787 F.2d 1559, 1563 (Fed. Cir. 1986).

Abruzzo admits that the events of April 2009 amounted to conduct unbecoming and ALJ, but argues that removal was excessive. Petitioner Br. at i(6). Here, the ALJ conducted a very thorough analysis of the factors outlined in *Douglas v. Veterans Administration,* 5 M.S.P.R. 280 (1981), and found the misconduct intentional, frequent, disruptive, and incompatible with his ability to adequately perform his judicial duties. *See Abruzzo*, 2010 MSPB LEXIS 5624, at *91-97. The Board's findings that Abruzzo cannot effectively serve as an ALJ due to his sustained misconduct does not amount to an abuse of discretion. Accordingly, we uphold the Board's penalty of removal.

## III. Conclusion

We have considered all of Abruzzo's remaining contentions on appeal and find them without merit. In light of the foregoing, we *affirm*.

### AFFIRMED

### COSTS

Each party shall bear its own costs.